UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| MICHAEL DAVIS, | : | |
| *Plaintiff,* | : | No. 3:16-cv-1981 (JAM) |
| | : | |
| v. | : | |
| | : | |
| DR. CHARLES WILLIAMS, et al., | : | |
| *Defendants.* | : | |

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Michael Davis is confined at the Osborn Correctional Institution. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. Plaintiff names two defendants, Religious Facilitator Dr. Charles Williams and Correctional Officer Hutton. He alleges that his rights to the free exercise of his religion were violated when his name was removed on the basis of false pretenses from the list of prisoners who could attend religious services. He also alleges that he was denied due process when his grievances regarding defendants' actions went unanswered. After an initial review, I conclude that the complaint should be served on both defendants.

BACKGROUND

The following allegations from plaintiff's complaint are accepted as true for purposes of the Court's initial review. On August 8, 2016, plaintiff was notified that Dr. Williams removed his name from the religious services list at the request of Correctional Officer Hutton. Doc. #1 at 5 (¶ 1). A week earlier, plaintiff had a verbal altercation with defendant Hutton during which he called her a "man bitch." Following the altercation, defendant Hutton fabricated several incidents involving plaintiff. *Id.* at 5 (¶ 2).

The notice indicated that plaintiff had been removed from the religious services list because he had ripped pages from a bible, and had passed notes and been disruptive during religious services—all allegations that, according to plaintiff, were false. *Id.* at 5 (¶ 3). Plaintiff submitted a request to meet with defendant Williams to discuss the matter. He received no response. *Ibid.*

Plaintiff then filed a grievance, which was rejected because defendant Williams had not responded to his request. *Id.* at 5 (¶ 4). Plaintiff filed a grievance appeal which was denied on technical grounds. *Id.* at 6 (¶ 5). Plaintiff then filed another appeal, to which he did not receive a response despite formally requesting one. *Id.* at 6 (¶ 6). Meanwhile, defendants' actions have prevented plaintiff from practicing his religion; defendants have also falsely stated that plaintiff is homosexual and beyond redemption. *Id.* at 6 (¶ 9).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02

(2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

Plaintiff contends that he has been denied the right to exercise his religion without being afforded due process. He claims that he did not receive any disciplinary charges for alleged misconduct that would justify removal of his name from the religious services list.

The First Amendment's Free Exercise Clause applies to a prisoner's sincerely held religious belief. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (Sotomayor, J.). "To prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 Fed. App'x 52, 55 (2d Cir. 2015).[1]

Plaintiff's allegations, taken as true, demonstrate a substantial burden on a sincerely held religious belief. The Court must "resist the dangerous temptation to try to judge the significance of particular devotional obligations to an observant practitioner of faith." *McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004). Instead, the Court must ask whether the state has put "substantial pressure on an adherent to modify his behavior and violate his beliefs." *Id.* at 202 n.4. Here, defendants have allegedly not only put pressure on plaintiff to modify his behavior—they have allegedly prevented him from attending religious services. Plaintiff states that he does "not feel right with the gospel, fellowship, and brotherhood out of [his] life" and feels "the defendants are forcing [him] away from his religion." Doc. #1 at 6 (¶ 10). Such

---

[1] In light of the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), it is unclear whether the "substantial burden" element of this test remains viable. *See Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014). Because I conclude that plaintiff has alleged a substantial burden, there is no need for me to address this issue in the first instance at this time.

3

actions, along with their effects, amount to a substantial burden, particularly in light of the Second Circuit's indication that "demonstrating such a burden is not a particularly onerous task." *McEachin*, 357 F.3d at 202.

Next, the Court must consider whether the complaint plausibly alleges facts to show that defendants' actions are "reasonably related to legitimate penological interests." *Holland v. Goord*, 758 F.3d 215, 222 (2d Cir. 2014). Plaintiff alleges that he is being excluded from religious services on false pretenses and that defendants are spreading false statements about his sexual orientation, presumably to prejudice others in his religion against him. There is no legitimate governmental objective in excluding plaintiff from religious services for false or improper reasons. Accordingly, the First Amendment claim as alleged may proceed at this time.

Plaintiff also claims that his due process rights were violated when he failed to receive responses to his grievances. The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amdt. 14, § 1. The "standard analysis" for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).[2]

---

[2] Of course, the Due Process Clause protects both a right to "substantive" due process and "procedural" due process. A substantive due process claim requires a plaintiff to show that government officials have deprived plaintiff of a fundamental constitutional right and that they have done so under circumstances that are no less than "arbitrary" and "outrageous," typically as demonstrated by conduct that "shocks the conscience." *See, e.g.*, *United States v. Medunjanin*, 752 F.3d 576, 590 (2d Cir. 2014) (substantive due process has generally protected "matters relating to marriage, family, procreation, and the right to bodily integrity"); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262–63 (2d Cir. 1999) (substantive due process standards violated "only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority"); *Velez v. Levy*, 401 F.3d 75, 93–94 (2d Cir. 2005)

As discussed above, plaintiff has plausibly alleged a violation of his free exercise rights. An individual's right to free exercise may arguably constitute the liberty interest protected by the due process clause. *See, e.g.*, *Means v. Nevada Dep't of Corr.*, 2010 WL 3982035, at *2 (D. Nev. 2010); *Lovelace v. Bassett*, 2008 WL 4452638, at *3 (W.D. Va. 2008); *but see Ali v. West*, 2017 WL 176304, at *5 (W.D. Wisc. 2017) (declining to recognize that denial of a prisoner's right to free exercise of religion is a deprivation of a liberty interest for purposes of a due process claim). "Whenever process is constitutionally due, no matter the context, [i]t . . . must be granted at a meaningful time and in a meaningful manner." *Proctor v. LeClaire*, __ F.3d __, 2017 WL 343526, at *8 (2d Cir. 2017).

Here, plaintiff's allegations show a lack of meaningful process—he received no response to a request for a meeting, received a late response to an initial grievance, had his review denied on technical grounds, and then received no response to his subsequent grievance. Doc. #1 at 5–6. Assuming plaintiff's allegations are true, as I must at this stage in the proceedings, I therefore conclude that he has plausibly stated that he was denied due process. This preliminary ruling, however, concludes only that plaintiff has arguably alleged a deprivation of a liberty interest and is without prejudice to the right of defendants to contend that plaintiff has not alleged a constitutionally protected liberty interest for purposes of pursuing his due process claim.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

---

(describing the "shocks the conscience" standard). Because the essence of plaintiff's claim is that he should not have been subject to transfer and restrictive confinement without procedures that allowed him to challenge the basis therefor, I do not understand the complaint to allege a violation of substantive due process distinct from a violation of procedural due process.

5

(1)     **The Clerk shall** verify the current work address of each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to them at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If either defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the complaint on defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)     **The Clerk shall** send written notice to plaintiff of the status of this action, along with a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

It is so ordered.

Dated at New Haven this 7th day of February 2017.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge